**Alexander Coven**, OSB # 191091
Oregon Justice Resource Center
P.O. Box 5248
Portland, OR 97208
Telephone: 503-715-2182
Facsimile: 971-328-3982
Email: acoven@ojrc.info

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **KYLE COLLEEN BLACK,** | USDC Case No. 3:24-cv-1721 |
| Plaintiff, | |
| v. | COMPLAINT |
| | Violation of Civil Rights |
| **NICHOLE BROWN, MICHAEL HSU,** | (42 U.S.C. § 1983) - Declaratory, |
| **JOHN BAILEY, GRETA LOWRY,** | Damages Relief |
| **JAMES TAYLOR, KATHRYN FAHRION,** | |
| **MERILEE NOWACK, TOSHA HICKEY,** | |
| **KERRY CUNNINGHAM, CHERYL RUBALCAVA,** | |
| **JOHN AND JANE DOES 1-5** | Jury Trial Demanded |
| each sued in their individual and official capacities, | |
| Defendants. | |

## INTRODUCTORY STATEMENT

1.      This is a civil rights action brought by Plaintiff, Kyle Colleen Black, pursuant to 42

U.S.C. § 1983, alleging violations of her constitutional rights related to the deprivation of her

liberty interest in earned time credits ("ETC") and her properly adjusted release date. Defendants

acted with deliberate indifference to the violation of Plaintiff's constitutional rights. Defendants

violated the Due Process Clause, *Ex Post Facto* Clause, and Cruel and Unusual Punishment

Clause of the U.S. Constitution. Defendants have engaged in a civil conspiracy to violate

Plaintiff's constitutional rights. Plaintiff seeks declaratory relief; nominal, compensatory, and

punitive damages; and reasonable costs and attorney's fees; pursuant to 42 U.S.C. § 1988.

## JURISDICTION

2.      This Court has jurisdiction over Plaintiff's claims regarding the violation of her federal

constitutional rights under 28 U.S.C. §§ 1331 and 1343.

## VENUE

3.      Venue is proper under 28 U.S.C. § 1391(b), in that one or more of the defendants reside

in the District of Oregon and Plaintiff's claims for relief arose in this district.

## PARTIES

4.      Plaintiff KYLE COLLEEN BLACK was a prisoner in the custody of the Oregon

Department of Corrections ("ODOC"). During all times relevant, she was confined at the Coffee

Creek Correctional Facility ("CCCF") in Wilsonville, Washington County, Oregon.

5.      Defendant NICHOLE BROWN was at all times relevant the Superintendent of CCCF for

ODOC. She was responsible for directing the custody of all prisoners in the CCCF institution.

Additionally, she was responsible for directing and managing the grievance process by which a

prisoner may challenge issues related to their confinement, including the application of ETC to a

prisoner's term of incarceration.

6.      Defendant MICHAEL HSU was at all times relevant the chairperson of the Oregon Board

of Parole and Post-Prison Supervision ("Board"), and responsible for adopting rules and policies

related to the Board's statutory authority and carrying out decisional authority under Or. Rev.

Stat. Chapter 144 and Or. Admin. Rules Chapter 255, including setting and scheduling release

dates. He has been personally involved in the violations alleged herein. He is sued in his official and individual capacities.

7.    Defendant JOHN BAILEY was at all times relevant a member of the Board, and responsible for adopting rules and policies related to the Board's statutory authority and carrying out decisional authority under Or. Rev. Stat. Chapter 144 and Or. Admin. Rules Chapter 255, including setting and scheduling release dates. He has been personally involved in the violations alleged herein. He is sued in his official and individual capacities.

8.    Defendant GRETA LOWRY was at all times relevant a member of the Board, and responsible for adopting rules and policies related to the Board's statutory authority and carrying out decisional authority under Or. Rev. Stat. Chapter 144 and Or. Admin. Rules Chapter 255, including setting and scheduling release dates. She has been personally involved in the violations alleged herein. She is sued in her official and individual capacities.

9.    Defendant JAMES TAYLOR was at all times relevant a member of the Board, and responsible for adopting rules and policies related to the Board's statutory authority and carrying out decisional authority under Or. Rev. Stat. Chapter 144 and Or. Admin. Rules Chapter 255, including setting and scheduling release dates. He has been personally involved in the violations alleged herein. He is sued in her official and individual capacities.

10.    Defendant KATHRYN FAHRION was at all times relevant the Administrator for the Offender Information Sentence and Computation Unit for ODOC. The Offender Information and Sentence Computation Unit ("OISC") is a department of ODOC responsible for the development and maintenance of inmate records and the sentence calculations of all inmates in the custody of ODOC. Defendant Fahrion was responsible for the delivery of program services and coordination of program operations at OISC. She was a policymaker for OISC. She has been

personally involved in the violations alleged herein. She is sued in her official and individual capacities.

11.     Defendant MERILEE NOWACK was at all times relevant the OISC Policy Manager for ODOC. She was responsible for supervising OISC Prison Term Analysts who calculate and apply ETC and establish release dates pursuant to applicable rules and statutes, and for verifying their calculations. She was a policymaker for OISC. She has been personally involved in the violations alleged herein. She is sued in her official and individual capacities.

12.     Defendant TOSHA HICKEY was at all times relevant the OISC Institution Records Manager for ODOC. She was responsible for supervising OISC Prison Term Analysts who calculate and apply ETC and establish release dates pursuant to applicable rules and statutes, and for verifying their calculations. She was a policymaker for OISC. She has been personally involved in the violations alleged herein. She is sued in her official and individual capacities.

13.     Defendant KERRY CUNNINGHAM was at all times relevant an OISC Prison Term Analyst ("PTA") for ODOC. She was responsible for calculating and applying ETC and establishing release dates pursuant to applicable rules and statutes. At all times relevant, Defendant Cunningham was assigned as Plaintiff's PTA. She has been personally involved in the violations alleged herein. She is sued in his official and individual capacities.

14.     Defendant CHERYL RUBALCAVA OISC Prison Term Analyst ("PTA") for ODOC. At all times relevant she was responsible for calculating and applying ETC and establishing release dates pursuant to applicable rules and statutes. At all times relevant, Defendant Cunningham was assigned as Plaintiff's PTA. She has been personally involved in the violations alleged herein. She is sued in his official and individual capacities.

15.     Defendant JOHN and JANE DOES # 1-5 are and were at all times relevant, employees of the ODOC, OISC, Board, and/or other state officials whose identities are currently unknown to Plaintiff. All Doe Defendants have been personally involved in the violations alleged herein. Defendant Does may include individuals who proceeded the named Defendants above in their official positions during the period of time in which Plaintiff was overincarcerated. Plaintiff will amend this complaint to formally name all Doe Defendants once their identifies are revealed to Plaintiff in discovery. All Doe Defendants are sued in their official and individual capacities.

16.     Defendants have acted under color of state law at all times relevant to this complaint.

17.     At all times relevant a civil conspiracy existed between two or more Defendants to violate Plaintiff's constitutional rights as alleged herein.

## FACTUAL ALLEGATIONS

18.     Between May 13 and May 14, 1996, Plaintiff committed the felony crime of aggravated murder, which was prosecuted in *State of Oregon v. Kyle Colleen Black,* Multnomah County Circuit Court Case No. 960735280.

19.     On November 15, 1996, Plaintiff pled guilty to the crime of aggravated murder and was sentenced to life imprisonment with a minimum of 30 years incarceration under Or. Rev. Stat. § 163.105 and a life term of post-prison supervision pursuant to Or. Admin. Rule 213-005-0004(1).

20.     In a separate criminal case, *State of Oregon v. Kyle Colleen Black*, Multnomah County Circuit Court Case No. 960735052, Plaintiff pled guilty to two counts of aggravated theft in the first degree for crimes she committed in 1995. She was also sentenced on November 15, 1996 to two separate 12-month terms of incarceration, to run consecutive to each other and consecutive to the previously imposed aggravated murder sentence.

21.     On November 18, 1996, Plaintiff was admitted to ODOC custody and began serving her aggravated murder sentence.

22.     Plaintiff was eligible to receive ETC pursuant to Or. Rev. Stat. § 421.121, for a total of a 20 percent reduction to her terms of incarceration for "appropriate institutional behavior."

23.     During her time in the custody of ODOC, Plaintiff engaged in appropriate institutional behavior, as defined by ODOC administrative rules, qualifying her to receive the full benefit of ETC reductions under Or. Rev. Stat. § 421.121.

24.     On August 4, 2021, Defendants Hsu, Lowry, and Taylor conducted a hearing pursuant to Or. Rev. Stat. § 163.105 and Or. Admin. Rules Chapter 255, Division 32 (commonly referred to as a "murder review hearing"). On August 10, 2021, Defendants Hsu, Lowry, and Taylor issued Board Action Form No. 2 ("BAF No. 2"), that established a 228-month prison term on Plaintiff's aggravated murder conviction, and set her release on that case for April 12, 2022. Defendants Hsu, Lowry, and Taylor also scheduled an exit interview hearing to occur on January 5, 2022, pursuant to Or. Rev. Stat. § 144.125.

25.     In *State ex rel Engweiler v. Cook,* 340 Or 373, 378, 133 P3d 904 (2006), the Oregon Supreme Court held that ODOC has a mandatory duty under Or. Rev. Stat. § 421.121 to reduce the "term of incarceration" for each eligible inmate (including an individual convicted of aggravated murder) who complied with ODOC's rules defining appropriate institutional behavior, including those individuals convicted of aggravated murder. Next, the Court interpreted the phrase "term of incarceration" in Or. Rev. Stat. § 421.121. *Cook,* 340 Or at 377-80. The Court concluded that the phrase "term of incarceration" refers to "the amount of time that an inmate must spend in prison until [she] is eligible to be paroled." *Cook,* 340 Or at 380. The Court further held that, in the context of an individual subject to a murder review

hearing, "[i]f the board does set [the individual's] parole release date, it also will have defined [her] 'term of incarceration.'" *Id.* at 383.

26.     In *Engweiler v. Persson,* 354 Or 549, 559-63 316 P3d 264 (2013), the Oregon Supreme Court rejected ODOC's request to overrule *Engweiler v Cook, supra*, and affirmed its prior interpretation of Or. Rev. Stat. § 421.121.

27.     On October 1, 2021, Plaintiff filed an administrative review request of BAF No. 2, informing the Board that because it had set Plaintiff's release date, she was immediately entitled to ETC under Or. Rev. Stat. § 421.121. She requested the Board "to direct ODOC to calculate and apply her ETC and for the Board to order her release from confinement onto post-prison supervision as of August 10, 2021." Plaintiff further stated that "[i]n the event ODOC or the Board disputes her claim to release, including the amount of ETC granted, [Plaintiff] requests a meaningful hearing immediately."

28.     On October 8, 2021, Plaintiff sent a letter, by and through counsel, to Defendants Erikson, Cunningham, and Rubalcava demanding that ETC be applied to her sentence and, after the application of ETC, Plaintiff be immediately released from confinement. Plaintiff alternatively requested that ODOC "promptly investigate her claim to release and, if ODOC disputes her entitlement to release, promptly schedule a *Haygood* hearing to address any factual matters that prevent her immediate release."

29.     On October 11, 2021, Defendant Cunningham sent the Board a memorandum giving "notice" to the Board that Plaintiff's "estimated projected earned date after application of earned time to the current prison term" was March 28, 2017. However, the memorandum further stated: "**Note:** The application of earned time to the prison term does not result in an inmate's release.

Rather, it simply moves the exit interview to an earlier date. The Department of Corrections cannot release the inmate without authorization from the [Board]." (emphasis in original).

30.     On November 3, 2021, the Defendants Hsu, Lowry, and Bailey denied Plaintiff's request for administrative review of BAF No. 2, stating that "the issue you are requesting action relates to subject matters outside the scope of BAF #2. The issues you raise relate to actions of ODOC. Therefore, the Board denies review."

31.     In October of 2021, Plaintiff filed an inmate grievance against OISC and specifically Defendant Cunningham for not calculating and applying Plaintiff's ETC, and for not immediately releasing Plaintiff from custody as a result of her ETC. Plaintiff's grievance also requested that if ODOC would not immediately release Plaintiff from custody, that a hearing be scheduled to address her ETC issue.

32.     On November 5, 2021, ODOC denied Plaintiff's grievance. The grievance response form denying Plaintiff's grievance was signed by Defendants Cunningham and Hickey. Plaintiff subsequently filed a grievance appeal, which was again denied on or about December 10, 2021. The letter in response to Plaintiff's grievance appeal was signed by Defendant Fahrion. In that denial, Defendant Fahrion explained that the "projected earned date does not result in an AIC's [Adult in Custody] release, it simply notifies the [Board] when their exit interview could be held. The authorization for release and the parole release date on the LIFE sentence is still determined by the [Board]; OAR 291-097-0236(1)(d)(B). * * * Oregon Revised Statute 163.105(2) (1995), states the *[Board] has the authority to set a release date*." (emphasis added). Defendant Fahrion further explained that "[o]nce the parole release date on your life sentence becomes firm, you will start serving the consecutive sentences. Once those sentences are complete, you will be eligible for release."

33.     On information and belief, Defendant Nowack and other officials at OISC promulgated a new policy shortly after *Engweiler v. Persson, supra,* was decided providing that the application of ETC to the prison term of an inmate serving a life sentence "simply moves the exit interview [hearing] to an earlier date." This new policy had the effect of denying ETC and properly adjusted release dates to those individuals serving terms of incarceration for murder and aggravated murder.

34.     In *Engweiler v. Cook, supra,* the Oregon Supreme Court held that the ETC under Or. Rev. Stat. § 421.121 was to be applied to the full "term of incarceration," not merely to the period of time after the individual has completed the exit interview hearing. Therefore, OISC's policy of using ETC simply to "move[] the exit interview [hearing] to an earlier date," rather than crediting an individual for the full ETC that they have earned through their appropriate institutional behavior, violates the holding of *Engweiler v. Cook.*

35.     On January 5, 2022, Defendants Hsu, Lowry, and Bailey conducted a hearing pursuant to Or. Rev. Stat. § 144.125 and Or. Admin. Rules Chapter 255, Division 60 (commonly referred to as an "exit interview"). On January 5, 2022, Defendants Hsu, Lowry, and Bailey issued Board Action Form No. 3 ("BAF No. 3"), which adjusted Plaintiff's release date to January 5, 2022, based on ODOC's memorandum, described in paragraph 29, and released Plaintiff to begin serving her consecutive terms of incarceration in Case No. 960735052. Defendants Hsu, Lowry, and Bailey further stated that "[t]he Department of Corrections will calculate the release date from custody and notify the Board."

36.     ODOC did not calculate Plaintiff's release date and did not apply the total term of ETC she had earned establishing a March 28, 2017 date of release for the aggravated murder term of

incarceration. Instead, ODOC began running Plaintiff's consecutive terms of incarceration for aggravated theft from January 5, 2022, rather than March 28, 2017.

37.    Following the Board's decision in BAF No. 3, Plaintiff did not receive any additional notices from ODOC regarding the calculation of her prison term.

38.    On March 11, 2022, Plaintiff filed a petition for habeas corpus in Washington County Circuit Court, *Kyle Colleen Black v. Nichole Brown,* Washington County Circuit Court Case No. 22CV08655, seeking to compel ODOC to fully apply Plaintiff's ETC and immediately release her from prison.

39.    On March 31, 2022, Defendant Brown opposed Plaintiff's petition for writ of habeas corpus, arguing, among other things, that Or. Admin. Rule 291-097-0236(1)(d)(B); Or. Admin. Rule 255-032-0015(2); and Or. Admin. Rule 255-032-0010(1) foreclosed Plaintiff from the ETC she demanded. Defendant Brown further argued that "it is the Board, not ODOC, that makes the release decision for inmates convicted and sentenced to life in prison for Aggravated Murder." The circuit court granted Defendant Brown's motion to deny the petition for writ of habeas corpus. Plaintiff appealed that decision to the Oregon Court of Appeals, and that appeal remains pending.

40.    On October 13, 2022, Plaintiff was released from confinement at CCCF onto parole supervision.

41.    Plaintiff has timely and diligently challenged Defendants decisions denying her ETC and a release date that accounts for her ETC on appeal. Plaintiff has three cases currently pending before the Oregon Court of Appeals that were consolidated for judicial review: *Kyle Collen Black v. Board of Parole and Post-Prison Supervision*, A177739; *Kyle Colleen Black v. Board of Parole and Post-Prison Supervision*, A181213; and *Kyle Colleen Black v. Nichole Brown*,

A178929. On September 30, 2024, the Oregon Court of Appeals heard oral argument in the three consolidated cases.

## CLAIMS FOR RELIEF

### First Claim for Relief:
### (8th and 14th Amends., U.S. Const.—Failure to Investigate and Respond)

42.    Plaintiff re-alleges each and every allegation of paragraphs 1 through 41 and incorporates those allegations herein by this reference.

43.    This claim involves Defendants Brown, Fahrion, Nowack, Hickey, Cunningham, Rubalcava, and Doe Defendants # 1-5.

44.    After Plaintiff put Defendants individually and collectively on notice and presented credible evidence of her claim that she was entitled to ETC and that she was being overdetained, Defendants refused to investigate in good faith or respond to her claim.

45.    Instead of investigating Plaintiff's overdetention claim, Defendants acted, both individually and collectively, in bad faith, maliciously, and unreasonably, by applying a policy contrary to Or. Rev. Stat. § 421.121 and the Oregon Supreme Court's authoritative decisions in *Engweiler v. Cook* and *Engweiler v. Persson*.

46.    Defendants, both individually and collectively, knew or should have reasonably known that by intentionally refusing to respond to the credible evidence of Plaintiff's ETC and claim for release, Plaintiff's constitutional rights would be violated and that she would be overdetained well beyond her adjusted release date.

47.    Defendants' acts and omissions alleged herein constitute deliberate indifference in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

**Second Claim for Relief:**
**(14th Amend. U.S. Const.—Procedural Due Process)**

48.    Plaintiff re-alleges each and every allegation of paragraphs 1 through 41, and

incorporates those allegations herein by this reference.

49.    This claim involves all Defendants.

50.    Under Oregon law, Plaintiff has a protected liberty interest in her ETC and her adjusted

parole release date.

51.    Defendants deprived Plaintiff of her liberty interest in ETC and her adjusted release date

without due process by:

   a.    Refusing to properly and timely calculate and apply Plaintiff's ETC to her 228-
         month term of incarceration in accordance with Or. Rev. Stat. § 421.121;
         *Engweiler v. Cook*; and *Engweiler v. Persson*;

   b.    Failing to provide Plaintiff a hearing before Defendants chose to extend Plaintiff's
         custodial period by refusing to adjust her January 5, 2022 release date on her
         aggravated murder term of incarceration to the properly calculated date of March
         28, 2017, as required by Or. Rev. Stat. § 421.121; *Engweiler v. Cook*; and
         *Engweiler v. Persson*;

   c.    Refusing to comply with Oregon Supreme Court's authoritative decisions in
         *Engweiler v. Cook* and *Engweiler v. Persson;*

   d.    Failing to properly promulgate rules and policies providing a constitutionally
         adequate process for granting Plaintiff's ETC; and

   e.    Failing to provide written procedures governing the disposition of and challenges
         to administratively established release dates in accordance with due process.

52.    To the extent that Or. Rev. Stat. § 163.105 or § 144.125 permits the Board or ODOC

officials to deprive Plaintiff of her ETC, that statute violates Plaintiff's right to due process.

53.    The acts and omissions of Defendants caused Plaintiff irreparable harm by depriving

Plaintiff of ETC and her adjusted release date.

54.    The acts and omission of Defendants deprived Plaintiff of procedural due process in violation of the Fourteenth Amendment to the United States Constitution.

### Third Claim for Relief:
### (Article I, § 10, cl. 1 U.S. Const.—Ex Post Facto)

55.    Plaintiff re-alleges each and every allegation of paragraphs 1 through 41, and incorporates those allegations herein by this reference.

56.    This claim involves all Defendants.

57.    At the time of Plaintiff's criminal offenses, Or. Rev. Stat. § 421.121 entitled Plaintiff to an ETC reduction in her term of incarceration for her appropriate institutional conduct.

58.    During her period of confinement in the custody of ODOC, Plaintiff engaged in appropriate institutional conduct under ODOC administrative rules, and Plaintiff therefore earned a full 20 percent ETC reduction against her term of incarceration.

59.    At the time of Plaintiff's criminal offenses, Or. Rev. Stat. § 144.125 granted the Board discretionary authority to conduct a hearing (commonly referred to as an "exit interview") prior to the scheduled release of an individual convicted of aggravated murder.

60.    At the time of Plaintiff's criminal offenses, the Board had limited the application of its "parole matrix rules" to prisoner's whose crimes were committed prior to November 1, 1989, and the rules governing persons convicted of aggravated murder were provided under Or. Admin. Rules Chapter 255, Division 32.

61.    At the time of Plaintiff's criminal offenses, the Board was required to set a release date upon finding a prisoner was capable of rehabilitation under Or. Admin. Rule 255-32-025(3).

62.    At the time of Plaintiff's criminal offenses, the Board specified under Or. Admin. Rule 255-32-025(3) that when an inmate has a consecutive sentence for a crime other than aggravated murder, the Board shall determine the prison term for the consecutive sentences pursuant to Or.

Rev. Stat. § 144.120, and that that prison term would start when the Board orders a release date

on the aggravated murder sentence established pursuant to Or. Rev. Stat. § 163.105.

63.    As stated above, shortly after *Engweiler v. Persson* was decided, OISC adopted a policy

that the calculation of ETC "simply moves the exit interview [hearing] to an earlier date."

64.    On or about September 15, 2016, ODOC adopted Or. Admin. Rule 291-097-

0236(1)(d)(B) that provided that "OISC's calculation of earned time on the initial prison term

will not generate either a 'parole release date' or a 'projected earned time release date' on the life

sentence as the parole release date is still determined by the [Board]." Defendant Brown cited

this administrative rule in her opposition to Plaintiff's petition for writ of habeas corpus,

described in paragraph 39.

65.    Defendants retroactively applied the OISC policies and Or. Admin. Rule 291-097-

0236(1)(d)(B) to Plaintiff, whose crimes occurred before the effective date of that rule and those

policies.

66.    The retroactive application of Or. Admin. Rule 291-097-0236(1)(d)(B) and OISC

policies, described above, to Plaintiff created a significant risk and result of increasing Plaintiff's

punishment in one or more of the following particulars:

    a.    Canceling ETC that Plaintiff had earned through her appropriate institutional behavior;

    b.    Reducing the total amount of ETC Plaintiff could earn against her term of incarceration;

    c.    Lengthening her total term of incarceration, as reduced by ETC, including her consecutive terms of incarceration for aggravated theft, beyond the adjusted earned time credit release date; and

    d.    Depriving her of a substantive reduction to her term of incarceration.

67.      Defendants knew, or should have reasonably known, that by retroactively applying the laws, described above, to Plaintiff, it would cause irreparable injury, in the loss of ETC and her overdetention and extended sentence(s).

68.      Defendants' retroactive application of the laws, described above, violated Plaintiff's right not to be punished by *ex post facto* laws under Article I, Section 10, Clause 1 of the United States Constitution.

**Fourth Claim for Relief:**
**(42 U.S.C. § 1983—Civil Rights Conspiracy)**

69.      Plaintiff re-alleges each and every allegation of paragraphs 1 through 41, and incorporates those allegations herein by this reference.

70.      This claim involves all Defendants.

71.      As described above and as will be further shown, ODOC officials and members of the Board, including Defendants, have a history of intentionally refusing to apply ETC to persons convicted of aggravated murder, repeatedly enacting rules and policies to cancel or limit the beneficial effect of ETC to the term of incarceration of individuals, such as Plaintiff.

72.      A civil conspiracy and meeting of the minds existed, and continues to exist, between two or more of the Defendants in this action to deprive Plaintiff of her constitutional rights in the manner alleged in one or more of Claims 1-3, *supra*, and one or more of said Defendants have engaged in overt unlawful act(s) in furtherance of the said conspiracy, resulting in damages to Plaintiff, including the irreparable loss of Plaintiff's liberty interests.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court will enter a Judgment in her favor, and against Defendants, as follows:

A.      Grant declaratory judgment, declaring that:

1.      On August 10, 2021, in BAF No. 2, the Board established that Plaintiff would be subject to a 228-month prison term on Plaintiff's aggravated murder conviction, and set Plaintiff's release date on that case for April 12, 2022.

2.      By setting Plaintiff's release date, the Board had defined Plaintiff's "term of incarceration" for her aggravated murder sentence, as authoritatively interpreted by the Oregon Supreme Court in *Engweiler v. Cook* and *Engweiler v. Persson*.

3.      Under Or. Rev. Stat. § 421.121, once Plaintiff's "term of incarceration" was defined by the Board, ODOC had a mandatory duty to apply the full ETC to Plaintiff for engaging in "appropriate institutional behavior" as defined by ODOC administrative rules. This is consistent with the Oregon Supreme Court's holdings in *Engweiler v. Cook* and *Engweiler v. Persson*.

4.      Between August 10, 2021 and October 13, 2022, Defendants refused to apply Plaintiff's ETC under Or. Rev. Stat. § 421.121 and reduce her 228-month prison term on her aggravated murder conviction, in violation of Or. Rev. Stat. § 421.121 and the Oregon Supreme Court's holdings in *Engweiler v. Cook* and *Engweiler v. Persson*.

5.      Even after Plaintiff was released from her aggravated murder term of incarceration on January 5, 2022, Defendants continued to refuse to apply ETC to her sentence. Instead, Defendants improperly calculated her consecutive sentences as beginning on January 5, 2022, rather than March 28, 2017.

6.      After Plaintiff repeatedly put Defendants individually and collectively on notice and presented credible evidence of her claim that she was entitled to ETC and that she was being overdetained, Defendants refused to investigate in good faith or respond to Plaintiff's claim.

7.      Instead of investigating Plaintiff's overdetention claim, Defendants acted both individually and collectively, in bad faith, maliciously, and unreasonably, by applying a policy contrary to Or. Rev. Stat. § 421.121 and the Oregon Supreme Court's authoritative decisions in *Engweiler v. Cook* and *Engweiler v. Persson*.

8.      Defendants, both individually and collectively, knew or should have reasonably known that by intentionally refusing to respond to the credible evidence of Plaintiff's ETC and claim for release, Plaintiff's constitutional rights would be violated and that she would be overdetained well beyond her adjusted release date.

9.      Defendants' acts and omissions alleged herein constitute deliberate indifference in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

10.     Defendants deprived Plaintiff of her liberty interest in ETC and her adjusted release date without due process by:

    a.      Refusing to properly and timely calculate and apply Plaintiff's ETC to her 228-month term of incarceration in accordance with Or. Rev. Stat. § 421.121; *Engweiler v. Cook*; and *Engweiler v. Persson*;

    b.      Failing to provide Plaintiff a hearing before Defendants chose to extend Plaintiff's custodial period by refusing to adjust her January 5, 2022 release date on her aggravated murder term of incarceration to the properly calculated date of March 28, 2017, as required by Or. Rev. Stat. § 421.121; *Engweiler v. Cook*; and *Engweiler v. Persson*;

    c.      Refusing to comply with Oregon Supreme Court's authoritative decisions in *Engweiler v. Cook* and *Engweiler v. Persson;*

    d.      Failing to properly promulgate rules and policies providing a constitutionally adequate process for granting Plaintiff's ETC; and

    e.      Failing to provide written procedures governing the disposition of and challenges to administratively established release dates in accordance with due process.

11.    The acts and omissions of Defendants caused Plaintiff irreparable harm by depriving Plaintiff of ETC and her adjusted release date.

12.    The acts and omission of Defendants deprived Plaintiff of procedural due process in violation of the Fourteenth Amendment to the United States Constitution.

13.    The retroactive application of Or. Admin. Rule 291-097-0236(1)(d)(B) and OISC policies, described above, to Plaintiff created a significant risk and result of increasing Plaintiff's punishment in one or more of the following particulars:

a.    Canceling ETC that Plaintiff had earned through her appropriate institutional behavior;

b.    Reducing the total amount of ETC Plaintiff could earn against her term of incarceration;

c.    Lengthening her total term of incarceration, as reduced by ETC, including her consecutive terms of incarceration for aggravated theft, beyond the adjusted earned time credit release date; and

d.    Depriving her of a substantive reduction to her term of incarceration.

14.    Defendants knew, or should have reasonably known, that by retroactively applying the laws, described above, to Plaintiff, it would cause irreparable injury, in the loss of ETC and her overdetention and extended sentence(s).

15.    Defendants' retroactive application of the laws, described above, violated Plaintiff's right not to be punished by *ex post facto* laws under Article I, Section 10, Clause 1 of the United States Constitution.

16.    A civil conspiracy and meeting of the minds existed, and continues to exist, between two or more of the Defendants in this action to deprive Plaintiff of her constitutional rights in the manner alleged in one or more of Claims 1-3, *supra*, and one or more of said

Defendants have engaged in overt unlawful act(s) in furtherance of the said conspiracy, resulting in damages to Plaintiff, including the irreparable loss of Plaintiff's liberty interests.

B.       Grant Plaintiff nominal damages against each Defendant, jointly and separately, in their individual capacities, for their violation of Plaintiff's constitutional rights, as alleged herein.

C.       Grant Plaintiff compensatory damages in an amount to be determined at trial against each Defendant, jointly and separately, in their individual capacities, for their violation of Plaintiff's constitutional rights, as alleged herein.

D.       Grant Plaintiff punitive damages in an amount to be determined at trial, against each Defendant, jointly and separately, in their individual capacities for their willful, deliberate and intentional violation of Plaintiff's constitutional rights by:

    1.    Knowingly and willfully acting, and refusing to act, in violation of Or. Rev. Stat. § 421.121;

    2.    Knowingly and willfully adopting and retrospectively applying invalid, *ultra vires* policies and rules to justify depriving Plaintiff of rights and protections guaranteed by Or. Rev. Stat. § 421.121;

    3.    Knowingly and willfully refusing to investigate Plaintiff's claims of improper deprivation of ETC and overdetention;

    4.    Knowingly and willfully depriving Plaintiff of due process protections in relation to the denial of ETC credits he is entitled to under Or. Rev. Stat. § 421.121 as authoritatively construed by the Oregon Supreme Court in *Engweiler v. Cook* and *Engweiler v. Persson*;

    5.    Knowingly and willfully detaining Plaintiff beyond August 10, 2021, in violation of Or. Rev. Stat. § 421.121 as authoritatively construed by the Oregon Supreme Court in *Engweiler v, Cook* and *Engweiler v. Persson*; and

    6.    Knowingly and willfully engaging in a civil conspiracy to violate state law and Plaintiff's constitutional rights, all as alleged herein.

E.       Award Plaintiff reasonable costs, expenses and attorney fees, pursuant to 42 U.S.C. § 1988; and

F.      Grant Plaintiff such further relief as this Court deems just and equitable under the

circumstances.


DATED this 11th day of October, 2024.

                                        Respectfully submitted,


                                        _____
                                        **Alexander Coven**, OSB # 191091
                                        Oregon Justice Resource Center
                                        P.O. Box 5248
                                        Portland, OR 97208
                                        Telephone: 503-715-2182
                                        Facsimile: 971-328-3982
                                        Email: acoven@ojrc.info